COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-508-CR
  
  
  
EX 
PARTE
 
BOBBY 
EARL MCGRAW
 
 
 
------------
 
FROM 
THE 362ND DISTRICT COURT OF DENTON COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
I. Introduction
        This 
is an appeal from the denial of habeas corpus relief seeking the reduction of 
two bonds.  Appellant Bobby Earl McGraw contends that his bonds are 
excessive in violation of the Eighth Amendment to the United States 
Constitution; article I, section 13 of the Texas Constitution; and articles 1.07 
and 17.15 of the Texas Code of Criminal Procedure.[2]  
We will affirm.
II. Factual and 
Procedural Background
        In 
August 2003, police arrested McGraw for the offenses of manufacture and delivery 
of a controlled substance over 400 grams.  The trial court initially set 
McGraw’s bonds at a relatively low amount, and McGraw’s family posted the 
bonds.  In April 2004, the grand jury indicted McGraw and his bonds were 
raised to $250,000 for each of the two offenses.  A warrant for McGraw’s 
arrest issued because the original bonds were then insufficient.[3]  Thereafter, McGraw failed to appear for his May 20, 
2004 hearing.
        McGraw 
filed an application for writ of habeas corpus, asserting that the bonds were 
excessive and requesting a reduction in the amount of the bonds.  The trial 
court held a hearing on McGraw’s habeas application requesting bond reduction 
and denied the requested relief.
III. Excessive 
Bond
        A.     Standard 
of Review
        We 
review the trial court’s denial of a bond-reduction request under an abuse of 
discretion standard. See Ex parte Rubac, 611 S.W.2d 848, 850 (Tex. Crim. 
App. [Panel Op.] 1981); Ex parte Scott, 122 S.W.3d 866, 868 (Tex. 
App.—Fort Worth 2003, no pet.); see also Tex. Code Crim. Proc. Ann. art. 17.15 
(Vernon Supp. 2004-05) (giving trial court discretion to set amount of bond). To 
determine whether a trial court abused its discretion, we must decide whether 
the trial court acted without reference to any guiding rules or principles; in 
other words, whether the act was arbitrary or unreasonable. Montgomery v. 
State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). Merely because a trial 
court may decide a matter within its discretion in a different manner than an 
appellate court would in a similar circumstance does not demonstrate that an 
abuse of discretion has occurred. Id.
        The 
primary purpose of an appearance bond is to secure the presence of the defendant 
at trial on the offense charged. Ex parte Vasquez, 558 S.W.2d 477, 479 
(Tex. Crim. App. 1977); Scott, 122 S.W.3d at 868. Accordingly, bail 
should be set high enough to give reasonable assurance that the defendant will 
appear at trial, but it should not operate as an instrument of oppression. Scott, 
122 S.W.3d at 868. In a habeas proceeding, the burden of proof is on the 
defendant to show that the bail, as set, is excessive. Rubac, 611 S.W.2d 
at 849.
        Article 
17.15 of the Texas Code of Criminal Procedure sets forth the following criteria 
for establishing a defendant's bond:
   
1. The bail shall be sufficiently high to give reasonable assurance that the 
undertaking will be complied with.
 
2. 
The power to require bail is not to be so used as to make it an instrument of 
oppression.
 
3. 
The nature of the offense and the circumstances under which it was committed are 
to be considered.
 
4. 
The ability to make bail is to be regarded, and proof may be taken upon this 
point.
 
5. 
The future safety of a victim of the alleged offense and the community shall be 
considered.
 
Tex. Code Crim. Proc. Ann. art. 
17.15.  In addition to these factors, the court should also weigh the 
following factors in determining the amount of the bond: (1) the accused's work 
record; (2) the accused's family ties; (3) the accused's length of residency; 
(4) the accused's prior criminal record, if any; (5) the accused's conformity 
with the conditions of any previous bond; (6) the existence of outstanding 
bonds, if any; and (7) aggravating circumstances alleged to have been involved 
in the charged offense.  Rubac, 611 S.W.2d at 849-50; Scott, 
122 S.W.3d at 869.  The accused’s potential sentence and the nature of 
the crime are also primary factors to be considered.  Ex parte Hunt, 
138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pet. ref’d).
        B.     The Nature and 
Circumstances of the Offense
        The 
nature of the offense and the circumstances surrounding the offense are primary 
factors in determining what constitutes reasonable bond. Tex. Code Crim. Proc. Ann. art. 
17.15(3); see Ex parte Davila, 623 S.W.2d 408, 410 (Tex. Crim. App. 
[Panel Op.] 1981).  In considering the nature of the offense, it is proper 
to consider the possible punishment.  Vasquez, 558 S.W.2d at 479- 
80.  When the nature of the offense is serious and involves aggravating 
factors, a lengthy prison sentence following trial is probable.  Scott, 
122 S.W.3d at 869.  Therefore, pretrial bond must be set sufficiently high 
to secure the presence of the accused at trial because the accused's reaction to 
the prospect of a lengthy sentence might be to not appear.  Id.
        McGraw 
is charged with manufacture and delivery of methamphetamine in an amount of 400 
grams or more, which is classified in penalty group 1.  See Tex. Health & Safety Code Ann. § 
481.102(6) (Vernon Supp. 2004-05).  If convicted, McGraw faces a potential 
punishment range of life imprisonment or a term of not more than ninety-nine 
years or less than fifteen years and a fine not to exceed $250,000.  See 
id. § 481.112(f) (Vernon 2003).
        Given 
the serious nature of manufacturing and delivering methamphetamine and the 
potential for a lengthy sentence, the trial court properly could have concluded 
that the bonds were reasonable.
        C.     Ability 
to Make Bond
        McGraw 
requests that his bonds be reduced to an amount not exceeding $25,000 for each 
offense.  The accused's ability to make bond is merely one factor to be 
considered in determining the appropriate amount of bond. Tex. Code Crim. Proc. Ann. art. 
17.15(4); Scott, 122 S.W.3d at 870.  Simply because a defendant 
cannot meet the bond set by the trial court does not automatically render the 
bond excessive.  Scott, 122 S.W.3d at 870.  “If the ability 
to make bond in a specified amount controlled, then the role of the trial court 
in setting bond would be completely eliminated, and the accused would be in the 
unique posture of determining what his bond should be.”  Scott, 
122 S.W.3d at 870.
        At 
the hearing on the habeas application, McGraw’s mother testified that McGraw 
has no bank accounts or vehicle.  She further testified that she and her 
family lacked sufficient assets or financial resources to post two $250,000 
bonds.  She explained that she had only $100 in her checking account and 
that she had sold McGraw’s Palo Pinto property to hire his attorney.  
McGraw’s mother explained that she had $2,000 left over from the sale of the 
property after hiring the attorney and that she could put that toward McGraw’s 
bond; McGraw’s aunt indicated that she could pay $10,000.  McGraw’s 
mother also testified that McGraw could work for her husband as a plumber’s 
helper if he was released on bond.[4]  This 
evidence does not automatically render the bonds excessive.  See Scott, 
122 S.W.3d at 870.
        D.     Safety of 
the Victim
        In 
determining the appropriate amount of bond, the future safety of the community 
is to be considered.  Tex. Code 
Crim. Proc. Ann. art. 17.15(5); Scott, 122 S.W.3d at 870.  At 
the hearing, McGraw’s mother agreed that the victim of the alleged offenses 
was the community at large.  The community remained in jeopardy after 
McGraw posted the initial bond on these drug offenses because he picked up four 
additional drug offenses in Palo Pinto County.  Given these additional 
offenses and McGraw’s failure to appear at the May 20, 2004 hearing, the trial 
court properly could have concluded that the bonds were reasonable.  See 
Ex parte Maldonado, 999 S.W.2d 91, 97 (Tex. App.—Houston [14th Dist.] 
1999, pet. ref’d) (stating that it is a matter of common sense that those who 
possess illegal drugs with intent to deliver in the quantities present in this 
case effect the community in which they live).
        E.     Community 
and Family Ties
        Courts 
may also consider an accused's work record, family ties, and length of residency 
to determine what constitutes reasonable bond.  See Rubac, 611 
S.W.2d at 849; Scott, 122 S.W.3d at 871.  With regard to McGraw’s 
work record, his mother testified that McGraw worked as a loan officer at The 
Affiliates after he got out of the Marine Corps.  After that, he did custom 
blinds.  She testified that he could work for her husband as a plumber’s 
helper if they were able to help him make a reduced bond.  The record 
demonstrated that McGraw may have been doing some work for his mother’s 
husband prior to his arrest in August 2003, but there is no evidence showing how 
long he had been working at that job.
        McGraw’s 
aunt testified that most of McGraw’s extended family lives in Dallas County. 
She also testified that he had roots in Denton County.  She explained that 
had the extended family known the importance of the proceedings at the habeas 
application hearing, they would have come to support McGraw.  McGraw’s 
aunt said that she, along with his uncles, aunts, and grandmother, would make 
sure he appeared at his hearings.  However, she admitted that she did not 
know that McGraw had failed to show up at a prior hearing and that she was not 
privy to “a lot of information regarding . . . any of the charges.”
        McGraw’s 
mother testified that she has lived in Denton County her whole life and that 
McGraw has only been away from Denton County when he was in the military.  
She mentioned that he had purchased some land in Palo Pinto County and that it 
has since been sold, leaving him with no connections to Palo Pinto County.
        Although 
McGraw has ties to the community, the trial court could have concluded that 
McGraw’s community ties and family ties were insufficient to assure his 
appearance at trial when they had previously failed to make him appear at the 
May 20, 2004 hearing.  See, e.g., Ex parte Brown, 959 S.W.2d 369, 
373 (Tex. App.—Fort Worth 1998, no pet.).
        F.     Other 
Factors
        As 
mentioned above, a court should also weigh the accused's prior criminal record, 
if any, the accused's conformity with the conditions of any previous bond, the 
existence of outstanding bonds, if any, and aggravating circumstances alleged to 
have been involved in the charged offense.  Rubac, 611 S.W.2d at 
849-50; Scott, 122 S.W.3d at 869.  Even if McGraw had no criminal 
record prior to being charged with manufacture and delivery of methamphetamine 
in August 2003, he now has several other charges currently pending.  The 
Palo Pinto County drug charges have a bond of approximately $75,000, according 
to McGraw’s mother.  Moreover, McGraw failed to appear at his May 20, 
2004 hearing.  Furthermore, the police found McGraw’s home secured with 
seven surveillance cameras and stocked with numerous weapons.
        The 
trial court summed up its findings on the above factors as follows:
  
I think it is an affirmative duty to find out if you have a case set.  
Based on the evidence, he failed to show up May 20th, 2004. . . . [L]ooking at 
the amounts in both these cases, both of them are aggravated first-degree 
felonies.  In fact, he never shows up in my court until he’s arrested in 
another case in another county. . . . So[,] I’m denying the . . . writ of 
habeas corpus. . . . I don’t think it’s oppressive.
 
After 
weighing the factors, the trial court properly could have concluded that the 
bond should not be reduced.
IV. Conclusion
        Affording 
due deference to the trial court's ruling, we cannot say that the trial court 
acted arbitrarily or unreasonably by denying a reduction in the amount of 
McGraw's bonds.  Although the bonds are high, McGraw has failed to 
demonstrate that the bonds set are excessive.  See Brown, 959 S.W.2d 
at 373 (affirming denial of reduction of $500,000 pretrial bond in capital 
murder case).  Based on the nature and circumstances of the offenses, 
concerns regarding the safety of the community at large, and the other factors 
discussed above, the trial court could have properly concluded that McGraw's 
bonds of $250,000 for each offense were reasonable.  Because we hold that 
the trial court did not abuse its discretion in denying McGraw’s request for 
bond reduction, we affirm the order denying habeas corpus relief.
  
  
                                                                  PER 
CURIAM
 
 
PANEL 
F:   WALKER, J.; CAYCE, C.J.; and LIVINGSTON, J.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
January 6, 2005

NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
We rely on McGraw’s Application for Writ of Habeas Corpus or Bond Reduction, 
along with the record from the hearing on that application, because we did not 
request appellate briefing.  See Tex. R. App. P. 31.1.
3.  
The record demonstrates that after McGraw got out of jail on the August 2003 
drug charges, he was charged with a robbery in Lewisville in October 2003 and 
then received four more drug charges in Palo Pinto County in 2004.  It is 
unclear from the record whether these intervening offenses were considered when 
the bonds were raised.
4.  
McGraw’s mother is remarried.