COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-07-175-CR

EX PARTE MICHAEL JOSEPH 

BENNETT 

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

This is an appeal from the denial of habeas corpus relief seeking bond reduction.  Appellant Michael Joseph Bennett contends in a sole point that his bonds are excessive in violation of the Eighth Amendment to the United States Constitution; article I, section 13 of the Texas Constitution; and article 17.15 of the Texas Code of Criminal Procedure.  We will affirm.

II.  Procedural Background

Bennett is incarcerated on three counts
(footnote: 2) of aggravated sexual assault of a child.  The trial court set Bennett’s bail at $200,000 on each count.
(footnote: 3)  Bennett filed an application for writ of habeas corpus to reduce bail, asserting that the bail amount was excessive and requesting that it be reduced to a $10,000 surety bond.  The trial court held a hearing on Bennett’s habeas application requesting bail reduction during which Bennett appeared to argue that his bond should be lowered to $25,000 because his mother testified that she could make a $25,000 bond.  The trial court denied the requested relief.  This appeal from the denial of Bennett’s application for writ of habeas corpus to reduce bail followed. 

III.  Excessive Bail

A. Standard of Review

We review the trial court’s denial of a bond-reduction request under an abuse of discretion standard.  
See Ex parte Rubac
, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981); 
Ex parte Scott
, 122 S.W.3d 866, 868 (Tex. App.—Fort Worth 2003, no pet.); 
see also 
Tex. Code Crim. Proc. Ann. 
art. 17.15 (Vernon 2005) (giving trial court discretion to set amount of bond).  To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. 
Montgomery v. State
, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  
Id.
 

B. Reasonable Bail Factors

The primary purpose of an appearance bond is to secure the presence of the defendant at trial on the offense charged.  
Ex parte Vasquez
, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); 
Scott
, 122 S.W.3d at 868.  Accordingly, bail should be set high enough to give reasonable assurance that the defendant will appear at trial, but it should not operate as an instrument of oppression.  
Scott
, 122 S.W.3d at 868.
  In a habeas proceeding, the burden of proof is on the defendant to show that the bail, as set, is excessive.  
Rubac
, 611 S.W.2d at 849.

Article 17.15 of the Texas Code of Criminal Procedure sets forth the following criteria for establishing a defendant’s bond: 

1.  The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with. 

2.  The power to require bail is not to be so used as to make it an instrument of oppression.

3.  The nature of the offense and the circumstances under which it was committed are to be considered. 

4.  The ability to make bail is to be regarded, and proof may be taken upon this point. 

5.  The future safety of a victim of the alleged offense and the community shall be considered. 

Tex. Code Crim. Proc. Ann.
 art. 17.15.  In addition to these factors, the court should also weigh the following factors in determining the amount of the bond:  (1) the accused’s work record; (2) the accused’s family ties; (3) the accused’s length of residency; (4) the accused’s prior criminal record, if any; (5) the accused’s conformity with the conditions of any previous bond; (6) the existence of outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense.  
Rubac
, 611 S.W.2d at 849-50; 
Scott
, 122 S.W.3d at 869.  The accused’s potential sentence and the nature of the crime are also primary factors to be considered.  
Ex parte Hunt
, 138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pet. ref’d).

C. The Nature and Circumstances of the Offense
 

The nature of the offense and the circumstances surrounding the offense are primary factors in determining what constitutes a reasonable bond.
  Tex. Code Crim. Proc. Ann. 
art. 17.15(3); 
see Ex parte Davila
, 623 S.W.2d 408, 410 (Tex. Crim. App. [Panel Op.] 1981).  In considering the nature of the offense, it is proper to consider the possible punishment.  
Vasquez
, 558 S.W.2d at 479- 80.  When the nature of the offense is serious and involves aggravating factors, a lengthy prison sentence following trial is probable.  
Scott
, 122 S.W.3d at 869.  Therefore, pretrial bond must be set sufficiently high to secure the presence of the accused at trial because the accused’s reaction to the prospect of a lengthy sentence might be to not appear.  
Id.

Bennett is charged with multiple counts of aggravated sexual assault of a child, which is a first-degree felony.  
See 
Tex. Penal Code Ann.
 § 22.021(e) (Vernon Supp. 2006)
.  If convicted, Bennett faces a potential punishment range of life imprisonment or a term of not more than ninety-nine years or less than five years and a fine not to exceed $10,000.  
See id. 
§ 12.32 (Vernon 2003).  However, Bennett is eligible for probation because he has never been convicted of a felony.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 42.12, § 4 (Vernon 2006). 

Bennett’s eligibility for probation does not lessen the seriousness of the offenses for which he has been charged.  The record reveals that a child was the victim of the alleged offenses.  Sexual assault of a child is a serious offense.  
See Ex parte Hulin
, 31 S.W.3d 754, 759-60 (Tex. App.—Houston [1st Dist.] 2000, no pet.).  Moreover, the record demonstrates that Bennett failed to maintain contact with his attorney when his bonds were one-fourth of the amount at which they are currently set.  Given the serious nature of aggravated sexual assault of a child, the potential for a lengthy sentence, and Bennett’s prior pattern of failing to maintain contact with his attorney, the trial court properly could have concluded that the bond was reasonable to ensure Bennett’s presence at trial.
(footnote: 4)
 

D. Ability to Make Bond
 

At the hearing on his habeas application requesting bail reduction, 
Bennett requested that his bond be reduced to an amount not exceeding $25,000.  The accused’s ability to make bond is merely one factor to be considered in determining the appropriate amount of bond.  
Tex. Code Crim. Proc. Ann. 
art. 17.15(4); 
Scott
, 122 S.W.3d at 870.  Simply because a defendant cannot meet the bond set by the trial court does not automatically render the bond excessive.  
Scott
, 122 S.W.3d at 870.
  “If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be completely eliminated, and the accused would be in the unique posture of determining what his bond should be.”  
Id.
 

At the hearing on the habeas application, Bennett’s mother testified that Bennett does not have his own home or vehicle and has no bank accounts or trust accounts.  She further testified that she and her family had drained their financial resources by hiring attorneys for Bennett but that she could make a $25,000 bond.  Bennett’s mother also testified that Bennett would immediately start looking for employment if he was released and that he had been a roofer for twenty years prior to his incarceration.  This evidence does not automatically render the bonds excessive.  
See id.

E. Safety of the Victim
 

In determining the appropriate amount of bond, the future safety of the community is to be considered.  
Tex. Code Crim. Proc. Ann. 
art. 17.15(5);
 Scott
, 122 S.W.3d at 870.  At the hearing, Don Shipley, the victim’s grandfather, testified that the victim and his mother were currently living with him.  Shipley testified that his daughter is still married to Bennett, that she has not filed for divorce, and that she last saw him in January 2005 when he was arrested.  Shipley said that he is against the bond reduction because he is concerned for his grandson’s safety.  Shipley explained that his grandson and his mother are afraid of Bennett and are not sleeping well.  Shipley further testified that, to his knowledge, Bennett has not tried to contact Shipley’s grandson, but Bennett has been incarcerated during the period that Shipley’s grandson has been living with him.  Because Bennett was present at the hearing, he now knows where the victim is living.  Based on these facts, coupled with
 Bennett’s failure to maintain contact with his attorney, it is likely the trial court gave more weight to protecting the victim than any other factor in concluding that the bonds were reasonable.  
See Hulin
, 31 S.W.3d at 761 (holding that it was not unreasonable for trial court to give more weight to protecting victim than any other factor in concluding that $150,000 bonds were reasonable where appellant was charged with criminal solicitation of a fifteen-year-old minor and sexual assault).

F. Community and Family Ties
 

Courts may also consider an accused’s work record, family ties, and length of residency to determine what constitutes reasonable bond.  
See Rubac
, 611 S.W.2d at 849; 
Scott
, 122 S.W.3d at 871.  With regard to Bennett’s work record, his mother testified that he had been a roofer for twenty years.  Most of that time, Bennett worked for a single employer.  She said that Bennett, who was currently incarcerated and therefore unemployed, would immediately start looking for employment if he was released.  

Bennett’s mother also testified that he would live with her if he was released.  She gave the names of three other people in the community who were closest to Bennett. 

Bennett’s mother testified that she has lived in Wichita Falls for approximately thirty-five years.  She said that Bennett was born in Fort Worth in 1970 but has lived in Wichita Falls for thirty-five years.  The record revealed that Bennett did not own any property in Wichita Falls or anywhere else. 

Although Bennett has some ties to the community, the trial court could have concluded that Bennett’s community ties and family ties were insufficient to assure his appearance at trial when they had previously failed to make him maintain contact with his attorney.  
See, e.g., Ex parte Brown
, 959 S.W.2d 369, 373 (Tex. App.—Fort Worth 1998, no pet.) (determining that appellant did not have close ties to the community that might assure his presence at trial).

G. Other Factors

As mentioned above, a court should also weigh the accused’s prior criminal record, if any; the accused’s conformity with the conditions of any previous bond; the existence of outstanding bonds, if any; and aggravating circumstances alleged to have been involved in the charged offense.  
Rubac
, 611 S.W.2d at 849-50; 
Scott
, 122 S.W.3d at 869.  Even though Bennett had no prior criminal record, he now has three charges of aggravated sexual assault of a child pending against him.  The trial court specifically found that Bennett failed to maintain contact with his attorney on the bonds related to two of the pending aggravated sexual assault of a child charges.  After weighing the factors, the trial court could have properly
 concluded that the bonds should not be reduced.

IV.  Conclusion
 

Affording due deference to the trial court’s ruling, we cannot say that the trial court acted arbitrarily or unreasonably by denying a reduction in the amount of Bennett’s bonds.  Although the bonds are high, Bennett has failed to demonstrate that the bonds set are excessive.  
See Brown
, 959 S.W.2d at 373
 
(affirming denial of reduction of $500,000 pretrial bond in capital murder case).  Based on the nature and circumstances of the offenses, concerns regarding the safety of the victim, and the other factors discussed above, the trial court could have properly concluded that Bennett’s bonds of $200,000 for each offense were reasonable.  Because we hold that the trial court did not abuse its discretion by denying Bennett’s request for bond reduction, we overrule Bennett’s sole point and affirm the order denying habeas corpus relief.

PER CURIAM

PANEL F:  WALKER, GARDNER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:
 October 18,2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Although the State’s brief says that Bennett has been charged with two counts of aggravated sexual assault of a child, the record reflects that Bennett’s “Application For Writ Of Habeas Corpus To Reduce Bail” and the transcript from the hearing on that application both refer to three counts:  Cause Nos. 42509-C*1, 42509-C*2, and 42509-C*3. 

3:
It is unclear from the record when the trial court set this bond amount.  The record reflects that the trial court had initially set the bond amounts at $50,000 for both counts one and three and at $75,000 for count two.  On December 12, 2005, Bennett’s attorney filed three documents, one for each cause, suggesting that the bonds were insufficient because Bennett had failed to maintain contact with his attorney, which was a condition of his bond, and because Bennett had failed to maintain financial responsibility to his attorney, which was a condition of his bond.  Thereafter, the trial court declared the bond insufficient in cause one, ordered the clerk to issue a warrant for the rearrest of Bennett, and set Bennett’s bond upon rearrest at $500,000.  The trial court made the same findings and orders with regard to the bond in cause three and set Bennett’s bond upon rearrest at $350,000.  However, because Bennett, the State, and the trial court (in its order) refer to the current bond amount as $200,000, we will use that amount as well.

4:
The State’s brief mentions that the trial court declared a mistrial during the trial on the merits.  Consequently, the State maintains that because Bennett already knows what evidence the State will use against him, he knows the likelihood of being convicted and is more likely to abscond if released.  This information is not contained in the reporter’s record or clerk’s record in this appeal; however, we note that such information is contained in a separate appeal pending before this court.